Averil Lerman
Staff Attorney
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Petitioner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALBERT L. ALLEN,<br><br>    Petitioner,<br><br>vs.<br><br>BRUNO STOLC,<br><br>    Respondent. | Case No. 3:08-cv-0039-RRB-DMS<br><br>**SUPPLEMENTAL PETITION FOR<br>WRIT OF HABEAS CORPUS** |

    Petitioner, Albert Lee Allen, by and through counsel Averil Lerman, Staff Attorney, moves this court for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, and files this amended petition, supplementing the petition filed *pro se* by Mr. Allen on or about February 26, 2008 (*sub nom Allen v. Armstrong*.)

    Mr. Allen was tried three times on charges of first-degree murder for killing a man who had repeatedly threatened to come to Allen's home to kill him, and had then come to Allen's home, late at night when Allen was asleep, making threatening statements and gestures of intent. The jury was unable to reach a verdict at the first trial.  Allen was convicted in the second trial, but

the conviction was reversed on appeal for improper evidence.  Allen was acquitted of first-degree murder in the third trial, but convicted of second-degree murder.  This is detailed below.

## I.  STANDARDS GOVERNING HABEAS REVIEW

The Supreme Court has recognized that "[t]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action."  *Harris v. Nelson,* 394 U.S. 286, 290-91, 89 S. Ct. 1082, 1086, 22 L. Ed. 2d 281 (1969).  The writ is "the first line of defense against constitutional violations."  *Bounds v. Smith,* 430 U.S. 817, 828, 97 S. Ct. 1491, 1498, 52 L. Ed. 2d 72 (1977).

Habeas corpus is not a "static, narrow, formalistic remedy," but one which must retain the "ability to cut through barriers of form and procedural mazes."  *Hensley v. Municipal Court*, 411 U.S. 345, 349-50, 93 S. Ct. 1571, 36 L. Ed. 2d 294 (1973); *Harris v. Nelson*, 394 U.S. 286, 290-91, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969).

Albert Allen's petition is governed by the substantive standards of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA applies to all federal habeas petitions filed after April 24, 1996.  *See Patterson v. Stewart,* 251 F.3d 1243, 1245 (9th Cir. 2001).

As to any claim adjudicated on the merits in state court, a habeas petitioner must establish that the state court's decision was "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or that the trial court's actions "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  Where the matter was not adjudicated on the merits in state court, however, the requirements of

28 U.S.C. § 2254(d) do not apply. *See Panetti v. Quarterman*, 127 S. Ct. 2842. 2855 (2007); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Sellan v. Kuhlman*, 261 F.3d 303, 314 ($2^d$ Cir. 2001). The role of federal habeas proceedings is to assure that federal constitutional rights are observed. "[E]rrors that undermine confidence in the fundamental fairness of the state adjudication certainly justified the issuance of the federal writ." *Williams v. Taylor*, 120 S. Ct. 1495, 1503, 529 U.S. 362. 146 L. Ed. 2d 389 (2000).

The Federal District Court has the discretion to allow an evidentiary hearing and/or the expansion of the record for the purpose of further establishing that the determination of facts was unreasonable. Such a hearing is warranted if "(1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir. 1992).

A determination of a factual issue made by a state court shall be presumed to be correct. A habeas applicant challenging that factual determination has the burden of providing the presumption of correctness by clear and convincing evidence. The presumption of correctness applies only to state court determinations of historical facts, but not to mixed questions of law and fact. *Malone v. Calderon,* 164 F.3d 1210, 1212 (9th Cir. 1999); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007). Whether a trial error was unduly prejudicial is a mixed issue of law and fact. *McGhee v. Yukins*, 229 F.3d 506, 513 (6th Cir. 2000); *cf. Combs v. Coyle,* 205 F.3d 269, 278 (6th Cir. 2000) (both the performance and prejudice prongs of the ineffectiveness of counsel inquiry are mixed questions of law and fact). Accordingly, it is not subject to the presumption of correctness applied by the AEDPA. *See, e.g., McGhee v. Yukins,* 229 F.3d 506, 513 (6th Cir. 2000).

There is no necessity for the federal court to defer to the factual findings made by the state appellate court, where the appellate court is strictly relying on the same record available to the federal court. *See McGhee v. Yukins, supra* ("Furthermore, the state court of appeals made its determination based on a review of the record, rather than live testimony, so there is no reason to suppose the state court was especially well situated to observe the demeanor of witnesses and to make credibility determinations.").

The federal court will review the last reasoned decision of the state court. *Williams v. Rhoades*, 354 F.3d 1101, 1106 (9th Cir. 2004), *quoting Yost v. Nunnemaker,* 501 U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991). Where the last reasoned decision of the state appellate court is based on examining and adopting some of the trial court's reasoning, the trial court ruling is also relevant. *Id.*

## II.  PRIOR PROCEEDINGS

**A.   Overview**

Albert Allen was tried three times by the state of Alaska on charges relating to the homicide of Devron Labat. Allen asserted that Labat's death had occurred after Labat had assaulted him, both as result of self-defense and of accident. In the third trial, Allen was acquitted of first-degree murder, but convicted of second-degree murder. He was sentenced to a term of 66 years in prison for the homicide. He is incarcerated in Red Rock Correctional Center in Eloy, Arizona.

B.     **Underlying Events:**[1]

On June 15, 1994, in the early morning, Devron Labat died as result of a single stab wound to his stomach that severed his aorta. (Tr. 2437.) Labat's blood alcohol level was 0.122. (Tr. 2455.) Albert Allen was charged with first-degree murder. Allen had not been consuming any drugs or alcohol. (Tr. 2402.) Allen asserted that he had acted in self-defense, but that Labat's death had been an accident.

At the time of his death, Labat had been out of prison only for about a week. He had been released from Palmer Correctional Center on June 7, 1994, after serving time for second-degree theft (a reduced charge from the initial charge of armed robbery and felony assault). (Tr. 1951, 2528-30.) Labat had been sexually involved with a woman named Michelle Acquino. While he was serving his sentence, Labat learned that Allen was romantically involved with Acquino. Labat repeatedly said he was going to kill Albert Allen. (Tr. 1953, 2568, 2582, 2705.)

Labat had a violent history. He had previously told another girlfriend, Mindy Famulski, that he would kill her daughter if he thought Mindy was "messing" with him, and had previously held a 12-gauge shotgun to Mindy's head, warning her that "this is what I do to people that talk too much." (Tr. 2536-37, 1957-58, 2004-08, 2022.) Labat had been released on probation on the condition that he not have any contact with Mindy Famulski. (Tr. 2522-48.)

During the early morning hours of June 15, 1994, Labat, Famulski, and another woman, Julie Yourell, were driving around Anchorage in Famulski's pickup truck. (Tr. 1974-79.) Labat and Yourell were each drinking a 40-ounce beer. Labat believed that Michelle Aquino was

---

[1] Allen set most of these facts out in his amended application for postconviction relief.

living with Albert Allen. Yourell agreed to take Labat to Allen's apartment, so that Labat could confront Allen about Aquino. (Tr. 1978, 2096, 2101.) Yourell gave Famulski directions to Allen's apartment, and they proceeded there. (Tr. 1979.) Labat told Yourell and Famulski that "we're all going to die tonight." (Tr. 2030.) Labat explained to Famulski that he knew he was going to die. (*Id.*) Labat had a habit of telling people that he had a gun. (Tr. 2043.)

Labat, Yourell, and Famulski arrived at Allen's apartment around midnight. (Tr. 2271.) Yourell knew that Allen arose each morning at about 4 a.m., to get ready for his job at the post office. (Tr. 2125, 2712.) As Yourell and Labat got out of the truck, Yourell said, "Let' s go fuck up Albert's truck." (Tr. 1979.) First, though, they approached Allen's apartment. Allen lived in a four-plex, in a unit that was a half-basement, accessed by a short flight of stairs down from ground level.

Yourell knocked on Allen's door; Labat concealed himself around the corner near the back of the stairs. (Tr. 2102-03, 2125, 2132-34.) Allen, who had been asleep, woke up, and answered the door. He was wearing underwear, and a blue shower cap (to keep his hair gel off the bedding). (Tr. 2102.) In a strong, aggressive voice, Yourell called Allen a "punk" and asked whether Aquino was present in the apartment. Allen replied that she was not. (Tr. 2724.) Yourell told Allen he was lying; Allen opened his door and told her that she could come in and look for herself. (Tr. 2724.) Allen explained that Michelle Aquino was staying in Fairview, and that he was trying to get his life together and stay out of trouble, and that he did not need this trouble now. (Tr. 2740.)

Devron Labat then stepped forward, into Allen's doorway. He held his right hand behind his back, a hand that Alan believed held a gun. (Tr. 2739.) Both Labat and Yourell smelled of alcohol. (Tr. 2745.) Allen knew that Labat was serving time for threatening a person with a knife, and taking his money. (Tr. 2703.) Allen knew that Labat was a member of the Bloods, a notorious and violent gang. (Tr. 2703.) Allen knew that Labat was a dangerous, violent person, who carried a gun and had performed drive-by shootings. (Tr. 2699-2704.) Labat had previously called Allen from jail and told Allen that if he did not leave Aquino alone, Labat would kill Allen, his kids, and anybody who was at his house. (Tr. 2711.)

When he saw Labat come forward, Allen thought, "I'm dead." (Tr. 2726.) Allen began to close the door. Labat told Allen that, if he closed the door, Labat would shoot through it. (Tr. 2727.) Labat asked Allen if Allen was "willing to die for Michelle?" (2739.) Allen replied that he was only willing to die for Jesus Christ. (*Id.*) Labat told Allen that he was "going to take [Allen] out of the book of life if [Allen] didn't leave Michelle alone." (Tr. 2740.) Labat was drunk: his blood alcohol level was .122. (Tr. 2454.) He may have been under the influence of other drugs besides alcohol, but no tests were done to assess this. (Tr. 2456.)

Julie Yourell then encouraged Labat to shoot Allen, stating, "He's trying to dis' you, man. Go ahead and smoke him." (Tr. 2742.) Yourell was drunk and upset. Allen believed that Labat was about to shoot him. (*Id.*) Allen heard Labat cocking a handgun. (Tr. 2743.) Labat backed up out of Allen's apartment, and up the stairs, and eventually left. (Tr. 2744.) On his way out, Labat asked Allen to give him the picture of Allen and Aquino that was on Allen's wall. Allen refused. (Tr. 2744.)

Allen closed his door, locked it, and called 911. (Tr. 2746.) The emergency dispatcher told Allen that police would come. Based on the length of time it had taken for police to come to Allen's calls in the past, however, Allen believed that if he waited for police to arrive he would probably be dead before they arrived. (Tr. 2747.) Allen told the dispatcher at he would handle the situation himself.

From the inside of his apartment, Allen then heard noises and saw shadows – he believed that Labat and Yourell were outside his bedroom window. (Tr. 2747-48.) Allen believed that Labat was getting ready to shoot him. To avoid being shot inside his apartment, Allen grabbed a kitchen knife and crawled out the back bedroom window. (Tr. 2749.)

Allen thought he might get shot as he emerged from the window. Allen saw Labat kneeling by Allen's truck. (Tr. 2752-54.) Allen thought that Labat was damaging his vehicle. (Tr. 2752-53.) Labat ran away. Allen feared Labat because of his dangerous and violent character and history. Allen believed Labat would shoot him in the back if Allen turned and ran away from him. Allen chased Labat in order to wrest from Labat the gun that Allen believed Labat possessed so that Labat could not shoot him. (Tr. 2756-59.)

Eventually, Labat stopped running and abruptly turned to face Allen. Allen accidentally ran into Labat, and his knife pierced Labat's stomach, and, unbeknownst to Allen, severed a large blood vessel there. (Tr. 2760-61, 2784.) Allen threw the knife away from himself. Because Allen believed that Labat was not badly hurt, and was therefore still capable of shooting him, Allen continued to physically assault Labat as he lay on the ground, kicking him and hitting his head. Labat's stab wound, however, was his only lethal injury, and the cause of his death. (Tr. 2427,

2445-46.) During this time, Julie Yourell tried to strike Allen with a beer bottle inside a paper bag. (Tr. 2483, 2499.)

Albert Allen was charged with first-degree murder. *State v. Allen*, 3AN-94-4614 Cr. Allen was tried three times on those charges. The first trial occurred in November 1994. The jury could not agree on a verdict, and the case was set for retrial. Allen was retried in March 1995. He was convicted of first-degree murder, and sentenced to a term of 66 years. The conviction was overturned on direct appeal, on the basis that the jury was improperly allowed to hear improper and highly prejudicial evidence. *Allen v. State*, 945 P.2d 1233 (Alaska 1995).

Allen was tried for the third time in February and March 1999. Allen testified regarding his defense of self-defense and accident (as he had testified at each of the prior two trials). The jury acquitted Allen of the charge of first-degree murder, but convicted Allen of second-degree murder. The court sentenced Allen, again, to a term of 66 years.

At the sentencing, the defense requested a mitigated sentence on the basis that Allen had been significantly provoked by Labat, that Allen had acted under some degree of duress or threat, and that the offense more resembled manslaughter than second-degree murder, and thus deserved a sentence in the lower end of the sentencing range. At the sentencing, however, the judge stated that he believed that Allen's conduct was actually first-degree murder, and Allen deserved the same sentence he received following his initial (reversed) conviction for first-degree murder, notwithstanding the fact that Allen had been acquitted of murder by the final jury. The trial court judge issued the sentence after finding that Devron Labat had not been armed when he came to

Albert Allen's apartment, and that Allen had known that when he chased Labat.  *Allen v. State*, 56 P.3d 683, 685 (Alaska App. 2002).

Allen filed a merit appeal, *Allen v. State*, A-7430.  He raised a number of issues, including trial court error in the self-defense jury instructions, violation of the right to be present during a private meeting between the trial judge and one of the jurors during deliberations, untrammeled discretion of the trial court judge in deciding on a sentence for second-degree murder, and an excessive sentence claim.  Allen's appeal was denied, and the conviction and the sentence were affirmed.  *Allen v. State*, 51 P.3d 949 (Alaska App. 2002).

On or about September 20, 2002, Allen filed a petition for rehearing, on the issue of the appellate court's failure to decide certain sentencing issues he had raised on appeal.  Rehearing was granted, and an opinion was issued on October 11, 2002.  *Allen v. State*, 56 P.3d 949 (Alaska App. 2002).  The state appellate court held there that a judge's discretion to impose any sentence within the second-degree murder sentencing range is essentially unlimited.  (The sentencing range for that crime in Albert Allen's case was from 5 to 99 years.)  The court further held that the trial court had concluded that Allen had actually committed first-degree murder (notwithstanding the fact he had been acquitted of that by the trial jury) and was therefore justified in rejecting Allen's theory he had been provoked and repeatedly threatened by Devron Labat, and that therefore the homicide was mitigated.

On November 29, 2002, Allen filed a petition for hearing to the Alaska Supreme Court, *Allen v. State*, S-10729.  He asked the state supreme court to hear the case on the basis that (1) Allen's right to due process under the United States Constitution was denied when the state

appellate court held that the trial court's conclusions at sentencing were essentially unreviewable, and thus that the sentencing court had unfettered discretion to sentence Allen in any way it saw fit;[2] (2) Allen asserted he had been deprived of due process and to a fair trial by the trial court's plain error in failing to instruct the jury on a theory of self-defense against multiple assailants (the trial court instructions involved mention of only a single assailant); and (3) Allen asserted that he had been deprived of his right to be present at trial under the Sixth and Fourteenth Amendments when the trial court judge met privately with one of the jurors to assist the jury in finding Albert's police interview on a videotape.

Allen's petition for hearing was summarily denied on January 30, 2003.

C.   **State Post-Conviction Relief Litigation**

Allen filed a petition for post-conviction relief on or about July 31, 2003. *Allen v. State*, 3AN-03-6451CI. An amended application for post-conviction relief was filed on July 19, 2004. Among other claims, Allen asserted that he had been deprived of his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.

Allen complained that his attorneys had failed to conduct an adequate investigation and had, as a result, failed to call a number of witnesses critical to his self-defense claim. These witnesses included Michelle Kary Arms (who had heard Labat tell Allen on the telephone that he was going to come and kill Albert Allen in his home), Michelle Estelle (who had picked up Julie

---

[2] Allen also argued that the appellate court was inconsistent in its approach toward review of sentencing factors in indeterminate felony sentences.

Yourell in a car on the very night that Yourell and Devron Labat had come to Albert Allen's home), and Jim Snyder (an eyewitness to all of the outside interaction between Yourell, Labat, and Allen).

Allen also asserted several other claims, including a claim that his attorneys had failed to submit correct self-defense jury instructions, and that they had not objected to *ex-parte* contact between the judge and a juror. He also asserted that his sentence violated due process because it relied on facts not found by the jury.

The state filed a motion to dismiss Allen's post-conviction claim on the basis of state procedural law. November 16, 2004 "Motion to Dismiss for Failure to State a Prima Facie Case." Allen opposed the motion, and requested an evidentiary hearing. *See* Allen's Opposition to State's Motion to Dismiss, filed April 8, 2005, p. 6. Among other things, Allen pointed out that the affidavits from his attorneys conflicted in a manner that raised material questions of fact. *Id*.

On June 3, 2005, Allen's post-conviction relief case was dismissed by the state court without a hearing. "Opinion and Order Granting Motion to Dismiss Post-Conviction Relief Application," pp.2-3. The Court dismissed the post-conviction case solely on the basis of state law, on the basis that Allen had not made a *prima facie* showing as to the first prong of the state test for ineffective assistance of counsel. It held that Allen's post-conviction case should be dismissed without a hearing because affidavits filed by two of his trial lawyers were inadequate to show that the failure to call Michelle Kary Arms was ineffective. *Id*. The Court stated: "Regarding the decision to not call Michelle Kary Arms, the fact that one attorney does not recall why Arms was not called to the stand and that the other attorney recalls being unable to contact Arms does not support a finding that the two attorneys' conduct fell below the [state ineffectiveness] standard." *Id*., p. 3.

As to the other witnesses that Allen asserted should have been called, the court asserted [in error] that the attorney affidavits had indicated that none of those witnesses would have been helpful to Mr. Allen's case. *Id*.

Allen requested reconsideration of the court's order, on June 14, 2005. "Allen's Motion to Reconsider Order Granting Dismissal." He pointed out that the court made a factual error in concluding that trial counsel had indicated that their failure to call Michelle Estell as a witness was tactical. Allen said that neither affidavit had indicated that, and that the defense lawyers should have at least interviewed Estell in person before making a decision not to call her, given the fact that she had picked up Julie Yourell in a car, shortly after Labat was killed, and had witnessed Yourell's appearance, demeanor, and statements, and further investigation regarding what Estell saw and heard was certainly necessary. The court denied the request for reconsideration without substantive comment on June 24, 2005.

Allen filed an appeal of the dismissal of the post-conviction case. *Allen v. State*, A-9343. He asserted that the trial court had erred in dismissing Allen's claims of ineffective assistance of counsel for failure to state a claim, and had erred in denying Allen's motion for reconsideration when it misconceived a material fact in reaching its decision. His appeal was denied on March 16, 2007. *Allen v. State*, 153 P.3d 1019 (Alaska App. 2007). Allen filed a *pro se* petition for hearing to the Alaska Supreme Court on or about June 25, 2007. *Allen v. State*, S-12263. His petition was summarily denied on October 26, 2007.

On February 26, 2008, Albert Allen filed this action for habeas corpus, *pro se*.

**D.    Custody**

Albert Allen is incarcerated in Red Rock Correctional Center in Eloy, Arizona, at the direction of the state of Alaska. The current superintendent of that institution is Bruno Stolc.

**E.    Grounds for Habeas Relief**

**1.    Violation of the right to effective assistance of counsel**

Albert Allen's conviction and sentence were obtained in violation of his right to the effective assistance of counsel, under the Sixth and Fourteenth Amendments to the United States Constitution, as interpreted by the United States Supreme Court in *Strickland v. Washington*,, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984).

(a)    Albert Allen was deprived of effective assistance of counsel when his trial attorneys failed to undertake an adequate investigation to locate, and then to subpoena, critical witnesses supporting Albert's testimony that the homicide occurred as a matter of self-defense, and also accident. Mr. Albert's trial counsel failed to perform in a constitutionally adequate manner under the circumstances, and this failure deprived Mr. Albert of a fair trial.

Counsel failed to make an adequate effort to locate, interview, and subpoena the following witnesses:

(1)    Jim Snyder, an eyewitness to the events of that night, who could have testified that Devron Labat had a gun that evening, and had given it to Julie Yourell after he came away from Allen's apartment, among other things.

(2) Michelle Kary Arms, who had overheard Labat threatening to kill Allen on the phone call placed by Labat to Allen, in or about February 1994. Arms had been lying in bed with Allen, when Allen's phone had rung. Allen answered the phone. Arms could hear Devron Labat on the other end of the phone line, threatening Allen, and stating that he was going to come to Allen's door with a gun and blow his head off. Arms could also have testified that Allen was very frightened by the call, and was sick to his stomach after the call ended. Arms could have testified to the fact that she moved to California because she was afraid and did not want to be found with Allen when Labat came looking for Allen. Later, she knew that someone had been looking for her in connection with the case, but they did not find her.

(3) Michelle Estell, who could testify that, on the same night of the incident, she and her boyfriend had picked up Julie Yourell, who was bloody (from contact with Labat). They talked to Yourell about what had happened. It appears that Yourell had Labat's gun that night, and that Estell knew it, but that Estell may or may not have been comfortable telling the defense investigator about that on the telephone when he called, and may or may not have told him that she saw Yourell with Labat's gun. Estell later said that Yourell gave or sold Labat's gun to Estell's boyfriend, Germaine Goens, who was killed not long thereafter in an attempted drug robbery.

On information and belief, the defense investigator talked to Estell only on the telephone, but did not interview her in person. This was a substantial error, because a central witness like Estell would have to be interviewed in person. Estell apparently made

equivocal statements about whether Labat had brought a gun with him, and whether he had given it to her boyfriend, Germaine, who was also in the car when they picked up Yourell. By the time of the post-conviction process, Estell admitted that Yourell had Labat's gun that morning.

Trial counsel was ineffective in failing to conduct an adequate investigation into these central witnesses, and in failing to learn facts from them that would have been critical to the self-defense claim asserted by Albert Allen. Trial counsel could have asked that the witnesses be subpoenaed by the state troopers, and thus gained assistance in locating them, and in obtaining their testimony, but they did not do so. The state court erred in dismissing these claims without an evidentiary hearing, under all the facts and circumstances of this case, and in not deciding the claims on the merits.

(b)     Trial counsel was ineffective in failing to object to the jury instructions on self-defense. The jury instructions referenced a response to a single aggressor, when the evidence in this case was that there were at least two aggressors who came to Albert Allen's door, and who were threatening him. Attorney Christine Schleuss admitted that she had failed to object to the single-aggressor language by accident, and that she had planned to object but just forgot. In her affidavit, she admitted that this could have been a significant error, and have affected the outcome of the verdict.

### 2.     Violation of due process – unwarranted dismissal without a hearing

Albert Allen was deprived of a fair hearing, in violation of the Fifth, Sixth, and Fourteenth Amendments, on his claim of ineffective assistance of counsel at trial by the Alaska

courts, which denied his request for an evidentiary hearing on his claims of ineffective assistance of trial counsel. Allen's amended application for post-conviction relief set out facts adequate to require that the court hold an evidentiary hearing. In disposing of the case without a hearing, the court deprived Allen of due process of law. Mr. Allen's post-conviction claims were not adjudicated on the merits by the state court. Furthermore, the state court approach was further based on an unreasonable determination of the facts in light of the evidence presented at the state court.

### 3. Denial of due process – refusal to meaningfully review the sentence

Albert Allen was deprived of a fair appellate review of his sentence. The state appellate court refused to review the sentence, saying it was unreviewable. But the same court has agreed to review other sentences in similar cases, so the state appellate process given to Albert Allen was unfair.

Albert Allen was denied due process under the United States Constitution when the state appellate court held that the trial court's conclusions at sentencing were essentially unreviewable, and thus that the sentencing court had unfettered discretion to sentence Allen in any way it saw fit. This error was particularly egregious where the sentence imposed on Allen for second-degree murder was identical to the sentence imposed on Allen (in the previous trial) for first-degree murder, but Allen had been acquitted of first-degree murder by the final jury. The sentencing court's insistence that Allen had actually committed first-degree murder, in the face of this history, deserved appellate review.

Allen asserts that the state appellate court is inconsistent in its approach toward review of sentencing factors in indeterminate felony sentences. This violated Albert Allen's right to due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**F.     Verification**

Undersigned counsel states that the assertions of fact made herein are true and correct to the best of her knowledge and belief.

**G.     Relief Requested**

Albert Allen requests that he be given time to conduct necessary discovery and factual analysis regarding the claims set forward above. Almost all of the materials relevant to the ineffective claims are still in the possession of prior counsel (comprising more than 13 boxes of material). Allen's present counsel needs time to review the extraordinarily voluminous materials held by prior counsel, and to evaluate whether other discovery, from other entities, should be requested. Present counsel was required to file this amended application without further extensions of time, and has not had a chance to review the full underlying record. Mr. Allen also requests that the court grant him an evidentiary hearing at which he can present evidence supporting his claims. Mr. Allen requests that this court grant him a Writ of Habeas Corpus.

///

///

///

///

///

Respectfully submitted this 15th day of October, 2008.

          Respectfully submitted,

          FEDERAL PUBLIC DEFENDER
          FOR THE DISTRICT OF ALASKA

          /s/ Averil Lerman
          Staff Attorney
          Alaska Bar No. 8309092
          601 West Fifth Avenue, Suite 800
          Anchorage, AK  99501
          Ph:  (907) 646-3400
          Fax:  (907) 646-3480
          averil_lerman@fd.org

<u>Certification</u>:

I certify that on October 15, 2008, a copy of the foregoing document, with attachments, was served electronically on:

Kenneth Rosenstein, Esq.

/s/ Averil Lerman