OSPA

RECEIVED
DEPARTMENT OF LAW
DEC 2 2002
OFFICE OF SPECIAL PROSECUTIONS
AND APPEALS
ANCHORAGE, ALASKA

IN THE SUPREME COURT OF THE STATE OF ALASKA

ALBERT LEE ALLEN,   )
                    )
     Petitioner,    )
                    )
vs.                 )
                    ) Supreme Court No. No. S-10729
STATE OF ALASKA,    ) (Court of Appeals No. A-7430)
                    ) (Trial Court No. 3AN-S94-4614 CR)
     Respondent.    )
                    )
_____)

## PETITION FOR HEARING

VRA CERTIFICATION AND APP. R. 513.5 CERTIFICATION

I certify that this document and its attachments do not contain (1) the name of a victim of a sexual offense listed in AS 12.61.140 or (2) a residence or business address or telephone number of a victim of or witness to any offense unless it is an address used to identify the place of the crime or it is an address or telephone number in a transcript of a court proceeding and disclosure of the information was ordered by the court. I further certify, pursuant to App. R. 513.5, that the font used in this document is Univers 12.5 point.

Petitioner, by counsel, Paul E. Malin, Assistant Public Defender, requests that this court grant a hearing and reverse the intermediate appellate court's decision in Allen v. State, Opinion No. 1815 (Alaska Court of Appeals, July 26, 2002) which affirmed the judgment of the superior court.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Mr. Allen is serving 66 years in jail for killing Devron Labat. Labat's girlfriend was Michelle Acquino. Allen had become romantically involved with Acquino while Labat was serving time in jail for wielding a knife in a robbery. Labat called Allen from jail and told him that he was going to kill him and his family.

After Labat was released from jail, he immediately enlisted two companions to accompany him to Allen's apartment for an unannounced confrontation at

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

This is to certify that a copy of the foregoing is being mailed/delivered to: OSPA
By: [signature]

Exhibit E
Page 1 of 15

Case 3:08-cv-00039-RRB-SAO   Document 24-10   Filed 02/02/09   Page 1 of 15

midnight. Allen, who had to get up early the next morning for his job at the post office, was getting ready to go to bed. Labat, on felony probation with a "totally abstain" from alcohol condition, was legally intoxicated. He told his companions that "we're all going to die tonight."

When Allen opened his door; he was in his underwear and wearing a blue shower cap. Julie Yourell, one of Labat's companions, called him a "punk" and demanded to know if Acquino was in his apartment. Allen explained that Michelle was staying in Fairview, that he was trying to get his life together, and that he did not want any trouble. Yourell told Allen that he was lying. Labat, who had been hiding around the corner, approached Allen with his right hand behind his back. When Allen tried to close his door, Labat threatened to shoot right through it. Labat then threatened to kill Allen, and Yourell encouraged him to "smoke" Allen. Allen heard Labat cock his gun. He thought to himself, "I'm dead." Allen knew that Labat was a member of the Bloods, a notorious and violent gang and that he was a dangerous, violent person who carried a gun and performed drive-by shootings. But Labat unexpectedly left the doorway area and went outside to lurk in front of Allen's apartment.

Allen quickly closed his door and locked it. He called 911 and was assured that help was on the way. Allen, however, saw shadows and heard noises from outside his bedroom window. Convinced that Labat was about to shoot him, he grabbed a kitchen knife and crawled out a bedroom window.

Allen saw Labat kneeling by his truck. Allen thought that Labat was disabling his vehicle to prevent him from leaving so that he could not escape

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

Labat's attack. Allen, acting in split second under extreme stress, decided the best way to protect himself was to disarm Labat. He therefore approached Labat, intending to take away his gun. But Labat ran, and Allen pursued him. During the chase, Labat abruptly stopped and turned to face Allen, and the two collided. Allen accidentally stabbed him in the stomach, cutting his aorta. Allen, unaware that Labat was seriously hurt, assaulted Labat so that Labat would not be able to shoot him. He sat on the ground and waited for the police. The jury concluded that Allen did not intend to kill Labat, but convicted him of second-degree murder.

Allen's conviction, however, is flawed. Judge Milton M. Souter did not provide him with either a fair trial or a fair sentencing. In sentencing Allen, Judge Souter rejected Allen's proposed mitigators that Labat significantly provoked Allen, that he acted under some degree of duress, compulsion or threat, and that his offense was least serious because it more closely resembled manslaughter. Judge Souter found several aggravators and relied upon them to justify more than doubling the high end of the well-established Page benchmark of 20-30 years. Allen sought judicial review. The Court of Appeals refused review, holding that "Allen's arguments regarding the proposed mitigating [and aggravating] factors are moot."[1] Thus, under Allen, a sentencing judge's discretion to rule on contested aggravators and mitigators is unfettered because the judge's factual findings and legal rulings are unreviewable. This court should not permit the

---

[1] Order on Petition for Rehearing at 1-2 (emphasis added). The Court of Appeals did not address this issue in its original decision. Allen filed a petition for rehearing. The court addressed this issue in an Order on Petition for

3

Court of Appeals to extinguish the brightest lodestar in the appellate galaxy -- that discretionary rulings of the lower courts are subject to judicial review.

Furthermore, Allen's sixty-six year was excessive where Labat repeatedly threatened to kill him, showed up at his home unannounced at midnight to confront him, and then again threatened to kill him. Judge Souter also erred in instructing Allen's jury on the applicable law. The evidence established that Labat's companion, Julie Yourell, colluded with Labat to harm Allen. But Judge Souter failed to instruct Allen's jury that he had the right to defend himself against multiple assailants. Finally, just before Allen's jury returned a guilty verdict on second-degree murder, Judge Souter had improper ex parte contact with them without obtaining Mr. Allen's express and personal waiver. This court should grant the petition and reverse Mr. Allen's conviction or vacate his sentence.

## POINTS RELIED UPON FOR REVERSAL

### I. TRIAL COURTS DO NOT HAVE UNFETTERED DISCRETION IN RULING ON CONTESTED MITIGATORS AND AGGRAVATORS AND THE LACK OF JUDICIAL REVIEW VIOLATES DUE PROCESS

Mr. Allen was subject to a sentencing range of five to ninety-nine years[2] and the Page benchmark of 20 to 30 years.[3] The Court of Appeals has directed that a sentencing court "properly consider[s] [the aggravating and mitigating factors set forth in the presumptive sentencing scheme] as appropriate standards

---

Rehearing dated October 11, 2002.
[2] Former AS 12.55.125(b)(2).
[3] Page v. State, 657 P.2d 850, 855 (Alaska App. 1983).

in considering deviation from the target sentence established in Page."[4]

Following this directive, the parties gave prehearing notice of their intent to litigate aggravators and mitigators. The State relied upon its proposed aggravators to persuade the sentencing judge to exceed the Page benchmark; the defense relied upon its proposed mitigators to convince the sentencing judge not to exceed Page.[5] The parties presented evidence and arguments to Judge Souter to support their opposing positions on the aggravators and mitigators. Judge Souter discussed the standard of proof that he would apply to determining whether the parties had met their burden of proof on these factors. Judge Souter made specific findings and ruled on each contested factor. Furthermore, in determining how many years in jail Mr. Allen would spend, Judge Souter expressly relied upon both "the aggravators that have been demonstrated here" and his rejection of the Allen's proposed mitigators to find that Allen was a "worst type offender" who had committed a "worst offense."[6]

On appeal, Mr. Allen renewed his arguments he had raised below. Appellate courts review rulings on contested aggravating and mitigating factors

---

[4] Gregory v. State, 689 P.2d 508, 509 (Alaska App. 1984). See also Krack v. State, 973 P.2d 100, 104 (Alaska App. 1999) ("the consideration of statutory aggravating and mitigating factors can provide a useful guide for the consideration of an appropriate sentence for an unclassified felony.")

[5] The parties contested the aggravator of "most serious conduct" under AS 12.55.155(c)(10) and the mitigators of "some degree of threat, duress or compulsion" under AS 12.55.155(d)(3), "least serious" under (d)(9), and significant provocation from the victim under (d)(7).

[6] Exc. 37, 42.

5
Case 3:08-cv-00039-RRB-SAO   Document 24-10   Filed 02/02/09   Page 5 of 15
Exhibit E
Page 5 of 15

under the "clearly erroneous" standard.[7] Allen emphasized that the revised criminal code recognizes only "perfect" defenses such as self-defense, duress and necessary that wholly excuse a person's criminal conduct. In addition, heat of passion is a partial defense to murder that reduces the crime to manslaughter if the defendant's reaction to the provocation is reasonable.[8] Because the code does not recognize "imperfect" defenses involving a good faith but unreasonable belief, Allen argued that the "some degree of duress, coercion, threat or compulsion" mitigator was particularly applicable because it was intended to "alleviat[e]" the harshness of the "code's treatment of imperfect defenses."[9]

The same purpose of mitigator (d)(3) applies to mitigator (d)(7), that "the victim provoked the crime to a significant degree." The legislature's choice of the words "provoked to a significant degree" instead of "significant provocation" reveals an intent to adopt a "broader standard of provocation than the relatively restrictive standard set out in the heat of passion defense in AS 11.41.115(f)(2)."[10] The plain meaning of "provoke" denotes "direct and purposive" action: "[w]hen the victim directs action or words at the defendant for the express purpose of eliciting a response, it is clear that the defendant may be

---

[7] Ashenfelter v. State, 988 P.2d 120, 127-28 and n. 22 (Alaska App. 1999).
[8] Bell v. State, 658 P.2d 787, 790-91 (Alaska App. 1983), citing LaLonde v. State, 614 P.2d 808 (1980).
[9] Bell v. State, 658 P.2d at 791, citing Houston v. State, 602 P.2d 784, 796 (Alaska 1979) (self-defense); Weston v. State, 656 P.2d 1186 (Alaska App.1982) (distinguishing perfect from imperfect defenses).
[10] See Roark v. State, 758 P.2d 644, 647 (Alaska App. 1988).

said to have been 'provoked.'"[11] Thus both the (d)(3) and (d)(7) mitigators were intended to "mitigate" the code's rejection of "imperfect" defenses.

The Court of Appeals, however, refused to subject Judge Souter's factual findings or legal conclusions on the contested aggravators or mitigators to any judicial review. "Allen's arguments regarding the proposed mitigating factors are moot."[12] The court reasoned that since a sentence for second-degree murder is not strictly governed by presumptive sentencing, a sentencing court is authorized to impose "any sentence" it wishes even if its rulings on statutory aggravators or mitigators are factually or legally incorrect.[13]

This court should not permit sentencing courts to have unfettered discretion to rule upon contested aggravators and mitigators. This idea is inherently troubling; it is particularly disturbing when the sentencing court relies upon these rulings to exceed (in this case, more that double) a sentencing benchmark. This court should not permit the anomalous result where the Court of Appeals court directs sentencing courts to consider aggravators and mitigators as "appropriate standards in considering deviation from the target sentence established in Page",[14] and then, once the sentencing court had made these rulings, immunizes them from judicial review because "any challenges ... are moot."[15]

---

[11] Id.
[12] Order on Petition for Rehearing at 1.
[13] Id. at 1-2.
[14] Gregory v. State, 657 P.2d at 509.
[15] Order on Petition for Rehearing at 1-2, citing Krack v. State, 973 P.2d at 104; Nagasiak v. State, 890 P.2d 1134, 1135 (Alaska App. 1995). Krack and Nagasiak each devote a mere paragraph to analyzing the mootness issue.

7
Case 3:08-cv-00039-RRB-SAO  Document 24-10  Filed 02/02/09  Page 7 of 15
Exhibit E
Page 7 of 15

Decisions from the appellate courts of this state support the conclusion that granting any court or government agency unfettered discretion violates the constitutional right to due process.[16] This court should grant the petition and hold

---

[16] Both the federal and state constitutions protect due process of law. U.S.C.A. Const. Amend. 14; Art. 1, section 7, Alaska Constitution. Unfettered, unreviewable discretion is the converse of due process. See, e.g., Jerrel v. State, Dept. of Natural Resources, 999 P.2d 138, 144 (Alaska 2000) (emphasis added; citations omitted) ("An agency should not have *unfettered discretion* to vary the requirements of its regulations at whim ... When an agency is freed from the requirement of having to make general rules, this invites the possibility that state actions may be motivated by animosity, favoritism, or other improper influences."); Thane Neighborhood Ass'n v. City and Borough of Juneau, 922 P.2d 901, 901 (Alaska 1996) (emphasis added) (holding that city planning commission permit approval process was impermissible because "the Commission could grant approval to any permit application no matter how deficient it is, making the Juneau code virtually meaningless and the Commission decisions *effectively unreviewable*."); Bird v. Starkey, 914 P.2d 1246, 1249 (Alaska 1996) (emphasis added) (remanding for lower court findings because lack of findings renders the order "*essentially unreviewable* by this court"); State, Dept. of Fish and Game, Sport Fish Div. v. Meyer, 906 P.2d 1365, 1370 (Alaska 1995) (emphasis added) ("[A]ll final administrative actions are *presumed to be reviewable*.); Municipality of Anchorage v. Anchorage Police Dept. Employees Ass'n, 839 P.2d 1080, 1086 (Alaska 1992) ("Administrators should not have unguided and uncontrolled discretionary power to govern as they see fit."); Kaiser v. Sundberg, 734 P.2d 64, 68 (Alaska 1987) (emphasis added) ("We, too, are concerned with the potential for abuse in granting the appointing agencies *unfettered discretion* in determining availability [of job applicants seeking a promotion]."; Ferrell v. Baxter, 484 P.2d 250, 271 n. 30 (Alaska 1971) (rejecting Wigmore's position that a trial court's rulings on the qualifications of an expert are "unreviewable. We choose not to go this far..."); Tenison v. State, 38 P.3d 535, 539-40 and n. 8 (Alaska App. 2001) (emphasis added; citations omitted) (laws establishing licensing criteria so vague as to grant *unfettered discretion* to the licensing agency unlawfully abridge the First Amendment freedoms of speech and/or assembly); State v. Ladd, 951 P.2d 1220, 1223-24 (Alaska App. 1998) citing Alaska Constitution, Art. 1, § 1 (emphasis added) (a state prosecutor does not have *unfettered* charging *discretion* because he cannot obtain a felony indictment without proving probable cause to a grand jury); State v. Page, 911 P.2d 513, 517 (Alaska App. 1996) (emphasis added) (Alaska highly values

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

the sentencing court's rulings are subject to judicial review.

## II THE 66-YEAR SENTENCE WAS EXCESSIVE WHERE MR. ALLEN WAS NOT THE INITIAL AGGRESSOR, LABAT HAD REPEATEDLY THREATENED TO KILL ALLEN, SHOWED UP UNANNOUNCED AT MIDNIGHT AT ALLEN'S HOME, AND AGAIN THREATENED TO KILL HIM

By rejecting all Mr. Allen's proposed mitigators, Judge Souter failed to recognize any of the unique and unusual circumstances of this case. By holding that Judge Souter's rulings were immune from judicial review, the Court of Appeals shares in that same failure.

Before Labat and Yourell confronted and threatened to kill Allen at his home, he was a hard-working 32-year old steadily employed as a bulk mail distributor, trying to pay his bills and stay out of trouble. Allen did not have a drug or alcohol problem.

The salient facts of Allen's offense are distinctive. Labat repeatedly

---

individual privacy, and the police cannot have *unfettered discretion* to decide to conduct electronic monitoring of private conversations or "clandestine videotaping of non-public activities.") See also Bushnell v. State, 5 P.3d 889, 893 and n. 2 (Alaska App. 2000), citing Municipality of Anchorage v. Anchorage Police Dept. Employees Assn., 839 P.2d 1080, 1086 (Alaska 1992) (emphasis added) ("Our constitution forbids the legislature from giving administrators "unguided and uncontrolled discretionary power to govern as they see fit." Because AS 28.40.060 gives an executive branch official sole and *unfettered discretion* to define the amount of blood alcohol that constitutes the crime of driving while intoxicated, I conclude that this statute is an unconstitutional delegation of legislative authority.") (Mannheimer, Judge, dissenting).

Moreover, the Court of Appeals *has* reviewed aggravators and mitigators in murder cases. Sakegak v. State, 952 P.2d 278, 284 (Alaska App. 1998); Monroe v. State, 847 P.2d 84, 93 (Alaska App. 1993). It makes sense that there be *some* review of information that a sentencing judge relies upon, *especially* mitigators and aggravators which have legislative approval as factors that *can* or *should* impact a sentence.

threatened to kill Allen. Labat initiated a personal confrontation with Allan. He was the first aggressor, coming to Allen's own home unannounced at midnight, threatening to kill Allen. Allen believed that Labat was armed. Allen was so afraid that Labat would kill him that he immediately called 911 for help. In pursuing Labat to "pre-empt" his strike, Allen was acting out of fear and self-defense not only against Labat, but also against Yourell, who had aggressively urged Labat to "smoke" him.

The evidence in this case screams out provocation and threat. It is difficult to imagine a more compelling case of a victim provoking a crime and an accused acting under threats of physical harm and death. By their words and conduct, Labat and Yourell committed at least fourth-degree assault (placing Allen in fear of imminent physical injury) and harassment (with the intent to harass or annoy, insult, taunt, or challenge him in a manner likely to provoke an immediate violent response).[17] But the fear that drove Mr. Allen to take the desperate action that resulted in Labat's death was the very real fear that if he failed to act, Labat would kill him. It is easy to see that, in hindsight, Mr. Allen overreacted. But as Justice Holmes has aptly observed, "[d]etached reflection cannot be demanded in the presence of an uplifted knife."[18] Judge Souter's micro-analysis and hyper-technical dissection of this exploding firestorm event ignores the realities of the forces of fear, threat, and provocation that were interwoven into every second of

---

[17] See AS 11.41.230(a)(3); 11.61.120(a)(1).
[18] Brown v. United States, 256 U.S. 335, 343 (1921), cited with approval in Weston v. State, 682 P.2d 1119, 1121-22 (Alaska 1984).

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

this acutely intense and sudden tragedy.[19]

Mr. Allen should have received a sentence within the Page benchmark, instead of a sentence more than double the Page high end of thirty years. The jury found that he did not intentionally kill Labat, who, as even Judge Souter admitted, initially provoked Allen as the initial aggressor. Allen's pursuit of Labat, while imprudent and impulsive in hindsight, was driven by his fear that Labat would shoot him: thus it flowed out of an inherent instinct to survive, not from a plan or scheme. Allen's offense was therefore closer to a heat of passion manslaughter than to a first-degree murder.[20] Mr. Allen recognizes that this court rarely reviews a sentence. He hopes that this court will view his case as an appropriate exception.

### III. THE COURTS BELOW VIOLATED ALLEN'S RIGHTS TO DUE PROCESS AND TO A FAIR TRIAL BY FAILING TO INSTRUCT HIS JURY ON A DEFENSE AGAINST MULTIPLE ASSAILANTS

Both Labat and Yourell were initial aggressors against Allen. Judge

---

[19] See Howell v. State, 917 P.2d 1202 (Alaska App. 1996). Howell and Church argued in Howell's trailer. Howell had been drinking. Church left and initially drove away from the trailer. However, he turned around and approached Howell's trailer again. Howell heard gunfire and thought that Church had tried to shoot him. *Church was not armed and could not have fired at Howell.* Howell killed Church by firing at him twice with a rifle as he headed toward the trailer park's exit. The trial court denied an instruction for heat of passion, reasoning that at the time Howell shot, his dispute with Church was over and Church had left the area. The Court of Appeals reversed, finding that the trial court's reasoning was erroneous because the evidence showed that Howell reasonably, though mistakenly, believed that Church committed an act of serious provocation by attempting to shoot him.

[20] See Howell v. State, 917 P.2d at 1204-12 (passion includes fear, terror and other intense emotions that can motivate the defendant's conduct beyond the time when the deceased has apparently retreated from the scene of the initial

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

Souter's instructions on self-defense misled the jury by narrowly focusing on Allen's right to defend himself against "another person", that is, a single aggressor. "If there is evidence that more than one assailed defendant, the charge of the court is too restrictive if it confines the right of self-defense to the acts of the deceased."[21] While the Court of Appeals conceded the possibility that Allen's jury "might" have "misinterpreted" these "potentially flaw[ed]" instructions, it did not find plain error.[22]

The court erred. While Allen might have been able to argue his theory, without a legitimate legal vehicle that legitimized this theory, namely correct instructions from the court, his jury would view his argument as simply that -- mere argument.[23] Allen was "entitled to present his version of the events and the evidence supporting it in as full a manner as possible.'"[24] The incorrect jury instructions on self-defense deprived him of a fair trial and constitute plain error.

IV. **THE TRIAL COURT'S EX PARTE CONTACT WITH MR. ALLEN'S JURORS VIOLATED ALLEN'S DUE PROCESS AND CONFRONTATION RIGHTS**[25]

Judge Souter expressly told Allen of his constitutional right to be

---

conflict).
[21] McCuin v. State, 505 S.W.2d 831 (Tex. App. 1974), quoting 4 Branch's Annotated Penal Code (2d ed. 1956, Stout) Sec. 2113, p. 441. See also State v. Irons, 4 P.3d 174, 182 (Wash. App. 2000) (the jury must be instructed to consider "whether the slayer reasonably believed that several persons were acting in concert with the person slain, and whether they shared with him a design to commit a felony or do great personal injury to the slayer.")
[22] Allen v. State, slip op. No. 1815 at 17-18.
[23] "Curing" the error via arguments of counsel that are expressly "not evidence", Allen v. State, slip op. at 18, is unconvincing legal analysis.
[24] Smithart v. State, 988 P.2d 583, 591 (Alaska 1999) (footnotes omitted).
[25] Sec. 1, 14th Amendment, US Const.; Art. I, sec. 7 Alaska Const.

Alaska Public Defender Agency
900 W. 5th Avenue, Suite 200
Anchorage, Alaska 99501
Phone: (907) 334-4400

present before any contact between the judge and his jury:

> if the jury has any questions, like they got questions about the instructions or the evidence or whatever they may have questions about, you have the right, constitutional right to be here, right in the courtroom before we address any of that stuff and before we give the jury any kind of a response.[26]

Judge Souter did not heed his own advice. Just before Allen's jury reached a verdict, Judge Souter had <u>ex parte</u> contact with them. The bailiff had told Judge Souter that the jury was having trouble with the videotape player. Judge Souter then privately met with one of the jurors, who explained that the jury could not locate Allen's police interview on the tape. Judge Souter "searched around and looked" until he found the interview for Allen's juror. Defense counsel did not object.

The United States Constitution and the Alaska Constitution guarantee the right of the defendant to be present at every stage of the trial.[27] Allen had the right to be present whenever the jury and judge communicated during jury deliberations.[28] The right to be present is a right personal to the defendant. The appellate court will not lightly infer the waiver of this important constitutional

---

[26] Tr. 3145 (emphasis added).

[27] This right is based upon the confrontation clauses contained in the Sixth and Fourteenth Amendments, U.S. Constitution, and Article I, sec. 11 of the Alaska Constitution. An accused's right to be present at trial is also required by the due process clauses of the Fourteenth Amendment, U.S. Constitution, Art. I, sec. 7 of the Alaska Constitution, and the right to a fair trial in the Fifth Amendment, U.S. Constitution, and in the Fifth Amendment, Alaska Constitution.

[28] <u>Dixon v. State</u>, 605 P.2d 882, 884 (Alaska 1980) (footnotes omitted). This constitutional right has been further implemented by Criminal Rule 38.

13

right.[29] Trial judges must obtain a defendant's personal and express waiver of Rule 38(a) before conducting proceedings in the defendant's absence.[30]

Mr. Allen was not present when Judge Souter had his <u>ex-parte</u> contact. Judge Souter did not obtain Mr. Allen's personal and express waiver of his right to be present for this judge-jury contact. This court has held that it is "constitutional error for the judge to communicate with the jury ... in the defendant's absence."[31] Therefore Judge Souter committed constitutional error.

This error was not harmless beyond a reasonable doubt.[32] The State bears the burden of proving the error harmless under this rigorous standard.[33] The Court of Appeals relied upon defense counsel's failure to object, and therefore held that any appellate objection was waived.[34] But "the error occurs in not allowing the defendant to offer comments, suggestions, and objections to guide the substance and phrasing of the court's response to the jury"[35] and this court has reversed despite a failure to object.[36]

## REASONS FOR GRANTING REVIEW AND CONCLUSION

Whether the superior court has unfettered, unreviewable discretion presents an important constitutional issue of first impression that this court should review. AR 304(b), (c). Additionally, since the Court of Appeals has subjected

---

[29] Hoffman v. State, 950 P.2d 141, 145 (Alaska App.1993).
[30] State v. Hannagan, 559 P.2d 1059, 1064-65 (Alaska 1977).
[31] Id. at 1065.
[32] Dixon v. State, 605 P.2d at 884.
[33] Wamser v. State, 652 P.2d 98, 103 (Alaska 1982).
[34] Allen v. State, slip op. no. 1815 at 15 and n. 7.
[35] Jones v. State, 719 P.2d at 267.

similar findings to judicial review in Sakagak and Monroe, review is proper under AR 304(a). The issue of self-defense against multiple assailants is a significant question of law on a fundamental defense upon which this court has not ruled. AR 304(c). Judge Souter's ex parte contact with Mr. Allen's jurors conflicts with the Dixon/Hannagan/Wamser trilogy. AR 304(a). Review of Mr. Allen's sentence is appropriate because his 66-year sentence ignores the mitigating factors in his case. AR 304(d). This court should grant the petition.

DATED at Anchorage, Alaska November 29, 2002.

PUBLIC DEFENDER AGENCY

By: _____
PAUL E. MALIN (8408070)
ASSISTANT PUBLIC DEFENDER

---

[36] Raphael v. State, 994 P.2d 1004, 1016 (Alaska 2000).