IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALBERT L. ALLEN,

                Petitioner,

     v.

JAMES MILBURN, Superintendent of
Spring Creek Correctional Center,[1]

                Respondent.

Case No. 3:08-cv-00039-RRB

**OPINION AND ORDER GRANTING
IN PART AND DENYING IN PART
MOTION TO DISMISS
(DOCKET 156)**

## I.   INTRODUCTION

This matter comes before the Court on Respondent's *Motion to Dismiss Petitioner's Second Amended Petition* at Docket 156.  The motion is fully briefed.[2]  Oral argument was not requested and was not necessary to the Court's decision.

For the following reasons, the motion will be granted in part and denied in part.

---

[1] The Court takes judicial notice of the fact that James Milburn is the current superintendent of Spring Creek Correctional Center.  *See* Spring Creek Correctional Center, Alaska Department of Corrections, https://doc.alaska.gov/institutions/spring-creek (last accessed Aug. 25, 2022).  Under Rule 25(d) of the Federal Rules of Civil Procedure, Milburn automatically is substituted for previous respondent Arnaldo Hernandez.

[2] Docket 160 (Opposition); Docket 161 (Reply).

## II.  BACKGROUND

Petitioner Albert L. Allen is serving a 66-year prison sentence for a 1999 Alaska state court conviction on one count of murder in the second degree.[3]  His conviction was affirmed on direct appeal.[4]  In July 2003, Allen filed an application for post-conviction relief (PCR) in Alaska superior court.  Allen's first PCR alleged that his trial attorneys had provided him ineffective assistance of counsel when they failed to locate two witnesses.  The superior court dismissed Allen's application for failure to state a *prima facie* claim.  The Alaska Court of Appeals affirmed,[5] and the Alaska Supreme Court denied Allen's petition for hearing.[6]

In March 2008, Allen filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court.[7]  Respondent moved to dismiss, asserting that several of Allen's claims either were procedurally defaulted or had not been exhausted in state court.  In June 2010, the Court stayed its proceedings and held Allen's petition in abeyance to allow him to file a second PCR application in Alaska state court and exhaust the claims to

---

[3]  Allen's sentence was the result of his third trial.  His first trial took place in November 1994.  It ended in a mistrial after the jury was unable to reach a verdict.  At his re-trial in March 1995, Allen was convicted of first-degree murder and sentenced to 66 years.  But the Alaska Court of Appeals overturned his conviction on the ground that the judge had erroneously allowed the prosecution to introduce specific evidence of Allen's prior bad acts to prove his character for violence.  *Allen v. State*, 945 P.2d 1233, 1239–43 (Alaska App. 1997).  The State then tried Allen for a third and final time in February and March 1999, with a new judge presiding.  This time, the jury acquitted Allen of first-degree murder but convicted him of second-degree murder.  However, the judge gave him the same 66-year sentence the previous judge had imposed.

[4]  *Allen v. State*, 51 P.3d 949 (Alaska App. 2002); *Allen v. State*, 56 P.3d 683 (Alaska App. 2002) (rehearing).

[5]  *Allen v. State*, 153 P.3d 1019 (Alaska App. 2007).

[6]  Docket 24-18.

[7]  Docket 1 (Petition); *see also* Docket 19 (Suppl. Petition).

which Respondent had objected. Allen filed the second PCR, but the superior court dismissed it, finding that he had failed to state a *prima facie* claim for relief. The Alaska Court of Appeals affirmed in November 2012.[8]

Allen then sought a second stay to pursue a third PCR application on the ground that his federal habeas claims still were unexhausted because his attorney in his second PCR application had raised his ineffective assistance of counsel allegations under Alaska state law, not federal law. The Court granted Allen's motion in April 2016, concluding that his second PCR lawyer's failure to raise his federal claims was a reasonable excuse for Allen's failure to exhaust. The Court issued a second stay and again held Allen's petition in abeyance while he pursued a third PCR in Alaska state court.

In June 2014, Allen filed his third PCR application in Alaska superior court.[9] Allen's application alleged that his trial counsel had "provided him with ineffective assistance of counsel by failing to investigate and call witnesses critical to Allen's defense."[10] He asserted that his trial counsel's failures violated his rights under the Sixth Amendment to the U.S. Constitution and Article I, Section 2 of the Alaska Constitution.[11] He cited the Alaska constitutional standard set out in *Risher v. State*[12] and the federal constitutional standard set out in *Strickland v. Washington*,[13] noting that the decisions

---

[8] *Allen v. State*, No. A-10904, 2012 WL 5893466 (Alaska App. Nov. 21, 2012).
[9] Docket 140-1 (*Pro Se* Application); Docket 140-2 (Suppl. Application).
[10] Docket 140-2 at 2.
[11] Docket 140-2 at 20–21, 24–31.
[12] 523 P.2d 421 (Alaska 1974).
[13] 466 U.S. 668 (1984).

established "similar" standards.[14]  In his primary argument, Allen invoked his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution and cited the U.S. Supreme Court's decisions in *Strickland* and *United States v. Cronic*.[15]

In September 2016, the superior court dismissed Allen's third PCR as barred by *res judicata* and Alaska Stat. § 12.72.020(a)(5), which provides that "[a] claim may not be brought under [the Alaska PCR statute] or the Alaska Rules of Criminal Procedure if . . . the claim was decided on the merits or on procedural grounds in any previous proceeding."  Allen appealed, but he conceded that the superior court's dismissal of the PCR had been correct.[16]  Instead, Allen asserted only that his PCR attorney had provided ineffective assistance of counsel.[17]  The Alaska Court of Appeals affirmed the superior court's decision.[18]

Allen filed a fourth PCR application in August 2020.[19]  The State moved to dismiss on the grounds of successive petitioning, statute of limitations, *res judicata*, failure to state a claim, and failure to provide procedurally required affidavits.[20]  The Court takes judicial notice of the fact that the superior court granted the State's motion and dismissed Allen's fourth PCR.[21]

---

[14]  Docket 140-2 at 21.
[15]  Docket 140-2 at 24–25.
[16]  *Allen v. State*, No. A-12775, 2020 WL 9174631, at *1 (Alaska App. June 24, 2020); *see also* Docket 140-9 at 24–44 (Brief of Appellant).
[17]  *Id.*
[18]  *Id.*  The Alaska Supreme Court denied Allen's petition for hearing.
[19]  Docket 140-16.
[20]  Docket 140-19; Docket 140-21.
[21]  Docket Information, *Allen v. State*, No. 3AN-20-07877CI (Alaska Super. Ct. June 23, 2021), *available at* https://records.courts.alaska.gov/eaccess/searchresults.page?x=LPZ-Jn0i2*

*Allen v. Armstrong*                                                                 Case No. 3:08-cv-00039-RRB
Order re Motion to Dismiss Second Amended Petition                                              Page 4
Case 3:08-cv-00039-RRB   Document 162   Filed 08/26/22   Page 4 of 26

In June 2021, this Court lifted its second stay. On February 11, 2022, Allen filed a second amended petition.[22] The petition alleges only four of the seven federal habeas claims in Allen's original petition, abandoning the other three. On April 5, 2022, Respondent filed the present motion to dismiss Allen's remaining claims based on failure to exhaust and procedural default.[23]

## III. LEGAL STANDARDS

As one former Ninth Circuit jurist observed, "[h]abeas corpus is, without doubt, one of the most complex . . . areas of federal law."[24] Two aspects of federal § 2254 habeas law are relevant to the present motion: (A) the exhaustion requirement; and (B) procedural default.

### A. Failure to Exhaust State-Court Remedies

28 U.S.C. § 2254 provides that a federal court may not grant habeas relief to a petitioner "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[25] To satisfy this exhaustion requirement, § 2254 petitioners first must "fairly present" their claims in the appropriate state court, "thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."[26] Exhaustion is determined on a claim-by-claim basis.[27]

---

g37UdKH76CD87eO6naM3dOZ-J4jvUh4rUTmY37T0w4EVmE0MHxlOCuE4eDEH8wqfp4j9j
zf11XAQ (last accessed Aug. 26, 2022).
    [22] Docket 155 (Second Amend. Petition).
    [23] Docket 156 (Motion to Dismiss).
    [24] *Russell v. Rolfs*, 893 F.2d 1033, 1039 (9th Cir. 1990) (Kozinski, J., dissenting).
    [25] 28 U.S.C. § 2254(b)(1)(A).
    [26] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)).
    [27] *Insyxiengmay v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2005).

*Allen v. Armstrong*                          Case No. 3:08-cv-00039-RRB
Order re Motion to Dismiss Second Amended Petition           Page 5
Case 3:08-cv-00039-RRB   Document 162   Filed 08/26/22   Page 5 of 26

To "fairly present" a federal claim to a state court, a § 2254 petitioner must present his claim "(1) to the correct forum, (2) through the proper vehicle, and (3) by providing the factual and legal basis for the claim."[28]  To present a claim to "the correct forum," a petitioner must present his claims "in each appropriate state court (including a state supreme court with powers of discretionary review),"[29] thereby "invoking one complete round of the State's established appellate review process."[30]  To "provide the legal basis" for his claim, a petitioner "must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law."[31]

Alternatively, § 2254 petitioners can technically satisfy the exhaustion requirement by showing that "no state remedy remains available."[32]  State remedies are

---

[28] *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (per curiam) (citations omitted).

[29] *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting *Baldwin*, 541 U.S. at 29); *see also id.* ("Whether a claim is exhausted through a direct appellate procedure, a postconviction procedure, or both, the claim should be raised at all appellate stages afforded under state law *as of right* by that procedure." (quoting James S. Liebman & Randy Hertz, *Federal Habeas Corpus Practice & Procedure*, § 23.3b (4th ed. 1998))).

[30] *Chambers v. McDaniel*, 549 F.3d 1191, 1195 (9th Cir. 2008) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[31] *Insyxiengmay*, 403 F.3d at 668; *see also Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) ("In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis."); *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) ("Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." (quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999))).

[32] *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996); *see also* 28 U.S.C. § 2254(b)(1)(B) (precluding grants of § 2254 applications unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant").

available to a petitioner if they were available at the time he filed his petition, regardless of whether they are still available at the time of the court's ruling.[33]

## B. Procedural Default

When a state prisoner fails to first present his federal habeas claim "to the state court in accordance with state procedure" and "the state court would dismiss the claim on that basis," the prisoner's claim is "procedurally defaulted."[34] Under the procedural default rule, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed."[35] However, "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[36]

---

[33] *See Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993) (per curiam); *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) ("[I]f state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted, but exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court." (citation omitted)).

[34] *Shinn v. Ramirez*, 142 S. Ct. 1718, 1727–28 (2022).

[35] *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citations omitted).

[36] *Id.* at 10; *see also Vansickel v. White*, 166 F.3d 953, 958 (9th Cir. 1999) (explaining that "[t]he doctrine of procedural default is based on comity, not jurisdiction, and the federal courts retain the power to consider the merits of procedurally defaulted claims" if cause and prejudice are shown (quoting *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992)).

## IV.  DISCUSSION

Respondent seeks dismissal of Allen's four remaining habeas claims on the grounds that Allen has not fully exhausted them in state court and no exceptions to exhaustion apply.[37]  The Court will address each claim in turn.

## A.  Claims 2–4

In Claims 2 through 4, Allen asserts that his trial attorney provided ineffective assistance of counsel by failing to locate defense witnesses Jim Snyder (Claim 2), Michelle Arms (Claim 3), and Michelle Estell (Claim 4) before his trial.[38]  Allen asserts that his trial counsel's failure to locate these witnesses before trial constituted deficient performance, and that there is a reasonable probability that the outcome of the trial would have been different had his trial counsel located them.[39]  Respondent asserts that Allen either has failed to exhaust these claims or has procedurally defaulted them.

### (1)  Whether Allen fairly presented Claims 2–4 in state court

Respondent moves to dismiss Claims 2 through 4 for failure to exhaust. Respondent asserts that Allen "failed to present federal ineffective assistance claims to Alaska's appellate courts."[40]  Respondent argues that Allen never presented his ineffective assistance of counsel claims under federal law, and that the Alaska state courts adjudicated Allen's claims "entirely on state law grounds."[41]

---

[37]  Docket 156 at 9–41.
[38]  Docket 155 at 13–21.
[39]  Docket 155 at 13–14.
[40]  Docket 156 at 10.
[41]  Docket 156 at 11–12.

*Allen v. Armstrong*                                                        Case No. 3:08-cv-00039-RRB
Order re Motion to Dismiss Second Amended Petition                                        Page 8
Case 3:08-cv-00039-RRB   Document 162   Filed 08/26/22   Page 8 of 26

Allen maintains that he exhausted Claims 2 through 4 in his third PCR application. Allen asserts that his third PCR "presented the state courts with a 'fair opportunity' to adjudicate the merits of Allen's Sixth Amendment trial-counsel ineffectiveness claims,"[42] although he does not explain his reasoning.

Respondent replies that Allen's third PCR cannot have "cured" his failure to exhaust his claims because "the record shows . . . [t]he superior court dismissed his petition solely on state grounds." Respondent also points out that, on appeal, Allen "concede[d] that the superior court correctly dismissed his third [PCR application]" and argued only that his third PCR attorney failed to follow Alaska procedural law.[43]

When Allen filed his motion to hold these proceedings in abeyance for a second time in 2014, he admitted that he had not exhausted his federal habeas claims regarding the effectiveness of his trial counsel's assistance.[44] Those claims included Claims 2 through 4 of Allen's second amended petition.[45] Thus, unless Allen's third PCR application "fully and fairly presented" those claims to the Alaska state courts, logic dictates that Claims 2 through 4 of Allen's petition must remain unexhausted unless no state remedies remain available to him.

The record indicates that Allen presented his federal claims in Claims 2 through 4 to the Alaska superior court. His third PCR application explicitly invoked his

---

[42] Docket 160 at 2–3.
[43] Docket 161 at 2.
[44] Docket 87 at 1–4 (Motion for Stay).
[45] *See* Docket 19 at 14–16 (Supplemental Petition).

right to effective assistance of counsel under the Sixth and Fourteenth Amendments.[46] His primary argument cited to the U.S. Supreme Court's decisions in *Strickland* and *Cronic*, which set out the standards for adjudicating specific and general violations, respectively, of the federal constitutional right of effective assistance of counsel.[47] Allen's argument included a lengthy statement of the facts underlying his assertion that his trial counsel was ineffective under those standards. Taken together, Allen's citation to federal case law and his description of the factual basis of his claim provided the requisite showing of the "factual and legal basis" for his federal claims for exhaustion purposes.

But Allen abandoned his federal claims on appeal.[48] His appellate counsel—who replaced his third PCR counsel for the appeal—conceded that the superior court correctly had dismissed his third application.[49] She argued only that Allen's third PCR counsel had been ineffective.[50] As a result of this inexplicable decision not to present his claims to "each appropriate state court,"[51] Allen failed to "invok[e] one complete round" of Alaska's established appellate review process.[52] For this reason, Allen did not present his federal ineffective-assistance-of-counsel claims to "the correct forum."[53] Allen

---

[46] Docket 140-2 at 20–21, 24–25.
[47] Docket 140-2 at 24–25.
[48] *See* Docket 140-9 at 24–44 (Brief of Appellant); Docket 140-13 at 5–15 (Petition for Hearing).
[49] *Allen*, 2020 WL 9174631, at *1 ("On appeal, Allen concedes that the superior court correctly dismissed his third application for post-conviction relief.").
[50] *Id.*
[51] *Casey*, 386 F.3d at 916 (quoting *Baldwin*, 541 U.S. at 29).
[52] *Chambers*, 549 F.3d at 1195 (quoting *O'Sullivan*, 526 U.S. at 845).
[53] *Scott*, 567 F.3d at 582.

therefore failed to "fully and fairly present" his federal claims to the Alaska state courts. Thus, Allen has failed to exhaust Claims 2 through 4.

### (2)    Whether Allen has procedurally defaulted Claims 2–4[54]

Having concluded that Allen has failed to fully and fairly present Claims 2 through 4 to the Alaska state courts, the Court next must determine whether any state remedies remain available to Allen.[55]

In the Court's determination, Allen no longer has any state court remedies available. Allen would be procedurally barred from pursuing Claim 2 through 4 in Alaska state court because any further PCR applications he might file regarding those claims would be barred under Alaska's statutory rule against PCR claims that previously have been decided.[56] The superior court denied Allen's third PCR on these grounds,[57] and Allen conceded the point on appeal.[58] Because it is clear that the Alaska state courts would hold Claims 2 through 4 procedurally barred, the Court concludes that Allen has procedurally defaulted Claims 2 through 4.[59]

---

[54] Allen's second amended petition seems to concede that Claims 2 through 4 are procedurally defaulted, although his position is not fully clear. *Compare* Docket 155 at 16 ("[C]laims [2 to 4], therefore, were procedurally defaulted during the initial-stage collateral review.") *with id.* ("Mr. Allen submits that he can overcome any *purported* procedural default with respect to Claims 2 to 4 . . . ." (emphasis added)). For the purposes of this order, the Court will construe Allen's petition to not concede procedural default of these claims.

[55] *See Johnson*, 88 F.3d at 831 (remanding claims a petitioner failed to "fairly present" to determine "whether any state remedies remain available and, if none are available, whether [petitioner's] claim is procedurally barred under [state] law.").

[56] Alaska Stat. § 12.72.020(a)(5).

[57] Docket 140-6 at 2–3.

[58] Docket 140-12 at 2; *Allen v. State*, 2020 WL 9174631, at *1.

[59] Any future PCR applications Allen files in Alaska state court also may be barred by the statute of limitations. Alaska's statute of limitations for PCR applications based on convictions that were appealed is one year from the date the appellate decision becomes final. Alaska Stat.

**(3) Whether Allen's procedural default prevents this Court from reviewing Claims 2 through 4**

For Allen's procedural default to preclude review of his claims, the state procedural rule underlying his default must be an adequate and independent state ground, and the prisoner must not have shown cause and prejudice for the default.[60] For the following reasons, the Court concludes that Allen's default precludes federal *habeas* review.

First, the state procedural rule was independent. To be deemed "independent," a state procedural rule "must not be interwoven with federal law."[61] This means that the rule must not "ma[k]e application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed."[62] In Allen's case, Alaska's rule against raising claims that previously have been decided is codified in Alaska Stat. § 12.72.020(a)(5). It does not depend on any antecedent applications of federal law other than those that might

---

§ 12.72.020(a)(3)(A). The Alaska Rules of Appellate Procedure provide that appellate decisions become final the day after the Alaska Supreme Court denies the petition for hearing, disposes of the case on rehearing or reconsideration, or the deadline for filing a motion for rehearing or reconsideration or a petition for hearing passes. Alaska R. App. P. 507(b)-(d). Accordingly, Allen's conviction became final in early 2003, and the statute of limitations for his PCR applications would therefore have run in early 2004. Assuming the State has not waived the defense, *see, e.g.*, *State v. Carlson*, 440 P.3d 364, 380 (Alaska App. 2019) (noting that the State's failure to plead the statute of limitations as an affirmative defense can constitute a waiver), the statute of limitations may bar Allen from filing future PCRs in Alaska state court regarding the conviction at issue here. *See* Docket 140-19 (asserting a statute-of-limitations defense to Allen's fourth PCR).

[60] *Martinez*, 566 U.S. at 9.

[61] *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003) (quoting *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001)).

[62] *Id.* (second alteration in original) (quoting *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000)).

form the substance of the PCR claim itself. It facially applies to all PCR claims, regardless of whether their substance rests on Alaska or federal law.[63] Consequently, the rule is not interwoven with federal law, and therefore it is independent for the purposes of Allen's procedural default.

Second, the state procedural rule was adequate. "To be deemed adequate, the state law ground for decision must be well-established and consistently applied."[64] "State rules that are too inconsistently or arbitrarily applied to bar federal review 'generally fall into two categories: (1) rules that have been selectively applied to bar the claims of certain litigants . . . and (2) rules that are so unsettled due to ambiguous or changing state authority that applying them to bar a litigant's claim is unfair."[65] Here, Alaska Stat. § 12.72.020(a)(5)'s rule against bringing PCR claims that previously have been decided has been clearly established in the statute since 1995.[66] Since then, Alaska courts have consistently applied the rule.[67] The parties have not provided the Court with any evidence

---

[63] *See* Alaska Stat. § 12.72.020(a)(5).
[64] *Bennett*, 322 F.3d at 583.
[65] *Id.* (quoting *Wood v. Hall*, 130 F.3d 373, 377 (9th Cir. 1997)).
[66] *Grinols v. State*, 10 P.3d 600, 607 (Alaska App. 2000). Alaska Stat. § 12.72.020(a) contains enhanced versions of this and several other procedural rules that were formerly in Rule 35.1(h) of the Alaska Rules of Criminal Procedure. *Id.* The pre-1995 version of Rule 35.1(h) provided, in relevant part: "Any ground finally adjudicated . . . may not be the basis for a subsequent [PCR] application . . . ." *Brown v. State*, 803 P.2d 887, 888–89 (Alaska App. 1990) (quoting Alaska R. Crim. P. 35.1(h)), *abrogated on other grounds by David v. State*, 372 P.3d 265, 269 (Alaska App. 2016).
[67] *See, e.g.*, *DeRemer v. State*, No. A-13002, 2021 WL 4768674, at *2 (Alaska App. Oct. 13, 2021); *Vandergriff v. State*, No. A-11913, 2018 WL 1888093, at *4 (Alaska App. Apr. 18, 2018); *Yatchmenoff v. State*, No. A-12037, 2017 WL 2889467, at *2 (Alaska App. July 5, 2017); *Demientieff v. State*, No. A-10874, 2013 WL 120904 at *3 (Alaska App. Jan. 9, 2013); *Harris v. State*, Nos. A-7306 & A-4278, 2000 WL 1350601, at *3 (Alaska App. Sept. 20, 2000); *Cole v. State*, No. A-6321, 1998 WL 174674, at *3–4 (Alaska App. Apr. 15, 1998).

*Allen v. Armstrong*
Order re Motion to Dismiss Second Amended Petition
Case No. 3:08-cv-00039-RRB
Page 13
Case 3:08-cv-00039-RRB   Document 162   Filed 08/26/22   Page 13 of 26

that the rule is selectively applied, nor has the Court discovered any in its research.  Thus, in addition to being nonfederal and independent, the Court concludes that Alaska's procedural rule also is adequate.

Lastly, Allen has not shown sufficient cause and actual prejudice to justify excusing his default.  Allen asserts that "the ineffective assistance of his court-appointed counsel in his first PCR" is sufficient cause to "overcome any purported procedural default with respect to Claims 2 to 4."[68]   Normally, "[n]egligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'"[69]  But under the exception of *Martinez v. Ryan*, "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."[70]   In other words, to excuse a default under the *Martinez* exception, a petitioner must show that,

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state

---

[68]  Docket 155 at 16.

[69]  *Martinez*, 566 U.S. at 10 (alteration in original) (quoting *Maples v. Thomas*, 565 U.S. 266, 280 (2012)).

[70]  *Id.* at 17; *see also Shinn*, 142 S. Ct. at 1733 ("[*Martinez*] held that ineffective assistance of state postconviction counsel may constitute 'cause' to forgive procedural default of a trial-ineffective-assistance claim, but only if the State requires prisoners to raise such claims for the first time during state collateral proceedings.").

law requires that an "ineffective assistance of trial counsel [claim]" . . . be raised in an initial-review collateral proceeding."[71]

Respondent concedes that Allen has satisfied the third and fourth elements.[72] Thus, only the first and second elements are at issue here.

To show a "substantial" claim, a petitioner must show that his ineffective-assistance-of-counsel claim regarding his trial lawyer has "some merit" under the two-pronged *Strickland* standard.[73] In this circuit, this showing "is comparable to the standard for granting a certificate of appealability under 28 U.S.C. § 2253(c)(2); a petitioner 'need only show that jurists of reason could disagree'" on the resolution of the claim.[74] "A claim is 'insubstantial' if 'it does not have any merit or . . . is wholly without factual support.'"[75]

Under the first *Strickland* prong, a defense lawyer's performance is constitutionally deficient if it "falls 'below an objective standard of reasonableness' and is outside of 'the range of competence demanded of attorneys in criminal cases.'"[76] The reasonableness standard "is necessarily a general one."[77] Courts must judge reasonableness "'from counsel's perspective at the time,' so as 'to eliminate the distorting

---

[71] *Smith v. Baker*, 983 F.3d 383, 395 (9th Cir. 2020) (alterations in original) (quoting *Trevino v. Thaler*, 569 U.S. 413, 423 (2013)).

[72] Docket 156 at 17.

[73] *Rodney v. Filson*, 916 F.3d 1254, 1259 (9th Cir. 2019) (quoting *Martinez*, 566 U.S. at 14).

[74] *Smith*, 983 F.3d at 396 (quoting *Runningeagle v. Ryan*, 825 F.3d 970, 983 n.14 (9th Cir. 2016)).

[75] *Rodney*, 916 F.3d at 1260 (alteration in original) (quoting *Martinez*, 566 U.S. at 16).

[76] *Smith*, 983 F.3d at 396 (quoting *Strickland*, 466 U.S. at 687–88).

[77] *Bobby v. Van Hook*, 558 U.S. 4, 7 (2009) (per curiam); *see also id.* ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." (quoting *Strickland*, 466 U.S. at 688–89)).

effects of hindsight.'"[78]    ABA guidelines and other "[r]estatements of professional standards . . . can be useful as 'guides' to what reasonableness entails, but only to the extent they describe the professional norms prevailing when the representation took place."[79]

Under the second *Strickland* prong, a defense lawyer's deficient performance is prejudicial if the petitioner shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[80]

Under these standards, the Court will address Claims 2 through 4 in turn.

### (a)    Jim Snyder (Claim 2)

Jim Snyder was an eyewitness to some of the events underlying Allen's murder conviction.   Allen summarily asserts that any efforts his trial lawyers, Sidney Billingslea and Christine Schleuss, made to contact Snyder were "minimal."[81]  Allen does not explain how his trial lawyers' efforts to contact Snyder were deficient, and his petition pleads only that Billingslea and Schleuss's attempts to contact Snyder were "minimal." Although Allen provides no affidavits or other evidence to support his assertions, Respondent's earlier filings contain copies of affidavits Billingslea, Schleuss, and their investigator, Richard Norgard, provided in 2004 for use in Allen's first PCR application.[82] Because both parties reference these affidavits in their memos, the Court will address the contents of these affidavits.

---

[78]  *Smith*, 983 F.3d at 396 (quoting *Strickland*, 466 U.S. at 689).
[79]  *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 688).
[80]  *Smith*, 983 F.3d at 399 (quoting *Strickland*, 466 U.S. at 694).
[81]  Docket 155 at 20.
[82]  Docket 140-2 at 38–42 (Schleuss Aff.); *id.* at 43–46 (Billingslea Aff.); *id.* at 47–49 (Norgard Aff.).

Billingslea's 2004 affidavit averred that she had been "very interested in interviewing" Snyder and the other witnesses, but Snyder "did not want to be interviewed by the police, and did not stay at the scene." Billingslea further averred: "I am not sure how aggressively we pursued [Snyder] after the first or second trial, for the third trial. If he had anything helpful to offer as a witness, he would have been called, but I cannot remember what that helpful testimony was, or whether he had any to offer."[83] Schleuss's affidavit largely agrees. She averred that she and Billingslea "pursued [Snyder] as a witness for the third trial, but didn't find him. I am not sure how aggressively we pursued him . . . . It was not a strategic decision not to call him as a witness, we just didn't find him to interview him."[84] Norgard averred that he searched for Snyder in databases and went to his last known address, but did not locate him.[85]

In the Court's view, Allen's trial-ineffective-assistance-of-counsel claim regarding Claim 2 is without any merit. The 1993 edition of the ABA's criminal defense standards, which was current at the time of Allen's trials, described:

> Considerable ingenuity may be required to locate persons who observed the criminal act charged or who have information concerning it. After they are located, their cooperation must be secured. It may be necessary to approach a witness several times to raise new questions stemming from facts learned from others. . . .
>
> . . .
>
> Effective investigation by the lawyer has an important bearing on competent representation at trial. . . . Failure to make adequate pretrial investigation and

---

[83] Docket 140-2 at 44, ¶ 5.
[84] Docket 140-2 at 39, ¶ 5.
[85] Docket 140-2 at 48, ¶ 5.

preparation may also be grounds for finding ineffective assistance of counsel.[86]

Given these standards and Billingslea's, Schleuss's, and Norgard's affidavits, the Court concludes that Allen's allegations regarding Snyder are wholly without merit. In his petition and briefs, Allen fails to explain how Norgard's inability to locate Snyder after searching databases and visiting his last known address constituted unreasonably deficient performance. Allen does not explain how such an investigation might have violated prevailing professional standards of investigation at the time, such as those quoted above. Nor does he provide any supportable alternative methods of investigation that Billingslea, Schleuss, and Norgard should have pursued.

Allen's only supporting argument is that his second PCR attorney's investigator was able to contact Snyder. But as the Alaska Court of Appeals persuasively explained in its decision on Allen's original PCR application, the fact that this later investigator found Snyder has little relevance to Allen's claim because "this was years later and . . . [the later investigator] may have had a significantly different motivation to find [Snyder]" than Billingslea and Schleuss had.[87] The fact that a different investigator, working years later and with a desire to find the witness for postconviction rather than trial purposes, found Snyder does not demonstrate that Billingslea and Schleuss's original investigation was deficient. In addition, Allen has provided no other evidence that

---

[86] *Larsen v. Adams*, 718 F. Supp. 2d 1201, 1229 (C.D. Cal. 2010) (quoting American Bar Association, *ABA Standards for Criminal Justice: Prosecution Function and Defense Function*, 4–4.1, Commentary, at 182–83 (3d ed. 1993)).

[87] *Allen*, 153 P.3d at 1026.

Billingslea and Schleuss's investigation was so inadequate that they fell outside the range of professional competence. Consequently, the Court concludes that his allegation regarding Snyder is without any merit. His trial-ineffective-assistance-of-counsel claim regarding Snyder therefore is not "substantial," which prevents Allen from satisfying *Martinez*'s standard for excusing his procedural default.

### (b)    Michelle Arms (Claim 3)

Michelle Arms was a former romantic partner of Allen's. Allen asserts that Arms overheard Allen's homicide victim threaten to kill Allen several months before the incident that led to Allen's conviction. But Allen's trial counsel never located Arms. Reasoning that Arms's testimony would have been "essential" at trial, Allen asserts that their failure to do so constituted ineffective assistance of counsel.

Under the standards recited in the previous section, Allen's trial-ineffective-assistance-of-counsel claim regarding Claim 3 clearly is without any merit. First, Allen has not demonstrated that Billingslea and Schleuss's investigation was deficient. Allen's argument rests primarily on Richard Norgard's 2010 affidavit from Allen's second PCR. Allen asserts that Norgard "averred that his investigation had been substandard, and that he did not exhaust all possibilities to secure her testimony."[88] But Norgard's second affidavit did not aver that his investigation had been substandard. Rather, it averred:

> It is my belief that, with sufficient time and effort devoted to the task, all witnesses can be found. If we had put an emphasis on contacting Ms. Arms, I am very confident that we would have succeeded in doing so. While I did make some effort to contact Ms. Arms, I certainly did not exhaust all possibilities. My notes do not reveal extensive efforts to locate her beyond

---

[88]  Docket 155 at 20.

the contacts with her mother. Had I made further efforts, either through her mother or [her] sister or other friends or associates, I would have been able to contact her . . . .[89]

Despite its self-effacing tone, Norgard's affidavit does not demonstrate that Billingslea and Schleuss's investigation was below minimum professional standards. It demonstrates that they did not "emphasize" contacting Arms. Moreover, this lack of "emphasis" on finding Arms may have been a strategic decision. In her affidavit from Allen's first PCR application, Billingslea indicated that she and Schleuss "*chose* not to call [Arms] as a witness."[90] Given the personal problems Arms seems to have had at the time and the uncertain value of her testimony,[91] there is no indication that Billingslea and Schleuss's attempts to locate Arms fell below the minimum level of professional competence and diligence.

Allen also points to Arms's averment that she had been living in Anchorage at the time of the trial and that it would not have been difficult for anyone to have found her.[92] In her affidavit, Arms averred: "I came back up to Alaska in 1995 and have been living in Anchorage since then. It would not have been hard for anyone to find me if they were looking. I was not aware that anybody was looking for me."[93]

---

[89] Docket 156-4 at 2. Norgard's 2004 affidavit, which he provided for use in Allen's first PCR application, contains no such sentiments. *See* Docket 140-2 at 49, ¶ 7 ("I remember knowing about [Arms] and the subject matter of her potential testimony. I attempted to locate and interview her, but was unable to find her. I tried to locate her through her mother and with database searches.").

[90] Docket 140-2 at 45, ¶ 7 (emphasis added). Schleuss averred that she did not remember making a strategic decision not to call Arms. Docket 140-2 at 40–41, ¶ 7.

[91] Norgard's 2010 affidavit avers that, according to his notes, Arms's mother told him at the time that Arms had been a crack cocaine user. Docket 156-4 at 2, ¶ 4.

[92] Docket 160 at 11 (citing Docket 156-3 at 2 (Arms Aff.)).

[93] Docket 156-3 at 2, ¶ 3.

But Arms's statement is belied by the fact that Norgard *did* attempt to contact Arms through her mother. Norgard's 2010 affidavit averred:

> My notes reveal that in my efforts to contact Ms. Arms I located and, on two occasions, spoke with her mother . . . in February of 1999. In the first contact, [Arms's mother] told [me] her daughter . . . was staying with her sister who did not have a phone. [She] agreed to forward a message to [Arms] when she saw her. My notes also reveal that in a follow-up call about two weeks later, on February 26, [Arms's mother] told me that she gave her daughter the message that I was looking for her but that she has "disappeared again"; that [Arms's] sister last saw [Arms] the previous Saturday, and that she occasionally comes around to take a shower.[94]

The fact that Arms's mother contacted Arms but was unable to put her in contact with Norgard refutes Arms's statement that "anyone" could have found her through her mother. Thus, Arms's affidavit does not demonstrate that Billingslea and Schleuss's attempts to locate her were deficient under the *Strickland* standard.

In short, Allen has not shown any indication that Billingslea or Schleuss's performance was deficient. He has therefore failed to show that his trial-ineffective-assistance-of-counsel claim regarding Claim 3 has "some merit," and thus does not meet the *Martinez* standard for excusing his procedural default of Claim 3.

### (c)   Michelle Estell (Claim 4)

Michelle Estell was an acquaintance of a woman who had known Allen's homicide victim and been with the victim immediately before the homicide. Allen asserts that Estell could have testified that she been with the woman not long after the homicide

---

[94] Docket 156-4 at 2, ¶ 4.

and that the woman had been in possession of a gun belonging to Allen's homicide victim.[95]

Regarding the first *Martinez* element, Allen's petition gives no explanation for his assertion that Billingslea and Schleuss's attempts to locate Estell were deficient under *Strickland*. He merely asserts that their efforts to find Estelle and the other two witnesses in question—Snyder and Arms—were "minimal."[96] Furthermore, the existing evidence contradicts Allen's allegation. In her affidavit for Allen's first PCR application, Schleuss averred that Norgard had located and interviewed Estell during the original investigation. Schleuss averred that she had reviewed a tape recording of the interview shortly before making her affidavit. According to Schleuss, Estell had told Norgard that "she did not remember a gun specifically on [the companion] that morning." Schleuss averred that "[i]f Estell had told the investigator that she had seen [the companion] with a gun that morning, I would have definitely wanted to call her as a witness for the defense."[97] Norgard's 2004 affidavit agrees with Schleuss's affidavit. He averred that he had interviewed Estell and that "[s]he did not remember a gun specifically on [the companion] that morning."[98] These affidavits conclusively demonstrate that Allen's trial-ineffective-assistance-of-counsel is without any merit.[99] Billingslea and Schleuss unquestionably

---

[95] Docket 155 at 14.
[96] Docket 155 at 20.
[97] Docket 140-2 at 39–40, ¶ 6.
[98] Docket 140-2 at 49, ¶ 6.
[99] Respondent candidly points out that Estell "changed her story after she was contacted during the post-conviction proceedings." Docket 156 at 35 (citing Docket 140-2 at 55–57, ¶¶ 1–4). But this change in Estell's "story" occurred nearly five years after Allen's final trial. It is not relevant to whether Billingslea and Schleuss failed to locate Estell or call her as a trial witness.

*Allen v. Armstrong*
Order re Motion to Dismiss Second Amended Petition
Case No. 3:08-cv-00039-RRB
Page 22

located Estell, and Allen's allegation that they performed deficiently by failing to locate

her is patently unfounded. Allen's trial-ineffective-assistance-of-counsel claim regarding

Claim 4 therefore is without any merit. Accordingly, the Court concludes that Allen has

failed to justify excusing his procedural default of Claim 4.

In summary, the Court concludes that although Allen technically has

exhausted Claims 2 through 4 because no state remedies remain available to him, Allen

has procedurally defaulted all three claims. The Court also concludes that Allen has not

established the requisite cause and prejudice needed to excuse his default under the

*Martinez* exception, and therefore his procedural default precludes federal habeas review

of Claims 2 through 4.[100]

## B.    Claim 7

In Claim 7, Allen alleges that his Alaska state conviction violates his federal

due process rights because the Alaska Court of Appeals failed to "meaningfully review"

his sentence.[101] In his direct appeal to the Alaska Court of Appeals, Allen challenged the

66-year sentence the trial judge imposed as excessive. The Court of Appeals declined to

review the trial judge's sentencing findings. Allen asserts that the Court of Appeals'

decision not to review the trial judge's findings violated his due process rights under the

Fourteenth Amendment.

---

[100] Because the Court has concluded that Allen has failed to establish the first *Martinez* element, it needs not address whether Allen satisfied the second element.

[101] Docket 155 at 22–25.

Respondent asserts that Allen failed to properly exhaust Claim 7 because he failed to raise it before the Alaska Court of Appeals and because the relevant portions of his petition to the Alaska Supreme Court made only cursory mention of federal law.[102] Allen maintains that he fairly presented the claim in his petition to the Alaska Supreme Court and thereby satisfied the exhaustion requirement.[103]

In the Court's view, Allen has exhausted Claim 7. First, the fact that Allen failed to raise his claim to the Alaska Court of Appeals is not relevant to exhaustion. Because Claim 7 is an allegation that the Alaska Court of Appeals violated Allen's constitutional rights in its ruling on his direct appeal, Allen's petition for hearing to the Alaska Supreme Court was the earliest he could have presented this claim to the Alaska state courts. Allen could not have presented this claim to the superior court or the Court of Appeals, because the substance of the allegation did not exist until the Court of Appeals made its two decisions on his direct appeal. Because Allen could not possibly have raised the substance of Claim 7 at any earlier stage of his direct appeal, his "failure" to do so was no failure at all.

Second, Allen fairly presented Claim 7. In his petition for hearing to the Alaska Supreme Court, Allen wrote: "Both the federal and state constitutions protect due process of law. U.S.C.A. [*sic*] Const. Amend. 14; Art. 1, section 7, Alaska Constitution."[104] This is a reference—albeit a brief one—to a specific provision of the U.S.

---

[102] Docket 156 at 38–41.
[103] Docket 160 at 19–22.
[104] Docket 24-10 at 8 n.16.

Constitution. A § 2254 petitioner does not have to author his own personal law review article to satisfy the requirement that he provide the state court with the legal basis for his claim. Rather, a petitioner "must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis."[105] The Ninth Circuit and the other district courts in our circuit have often concluded that § 2254 petitioners sufficiently provided state courts with legal bases for their federal claims if they invoked specific provisions of the federal Constitution, even if they otherwise relied on state law.[106]

Allen's petition for hearing clearly referenced the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. This was sufficient to "alert" the Alaska Supreme Court that his claim rested, at least in part, on federal law. Furthermore, Allen appears to have presented his claim in the correct forum, through the proper vehicle, and

---

[105] *Fields*, 401 F.3d at 1021.

[106] *E.g.*, *Insyxiengmay*, 403 F.3d at 668 ("[E]xhaustion is satisfied once the petitioner makes [an] explicit reference [to federal law] even if the petitioner relies predominantly on state law before the state courts"); *Wilcox v. McGee*, 241 F.3d 1242, 1244 (9th Cir. 2001) (per curiam) (concluding that a petitioner had provided a federal legal basis because "[a]lthough he relied almost entirely on state law before the [state appellate court], he did conclude by arguing that he was subjected to double jeopardy in violation of both the federal and state constitutions"); *Jones v. Smith*, 231 F.3d 1227, 1231 (9th Cir. 2000) (concluding that a petitioner's brief that "explicitly invoked his Sixth Amendment right to be informed of the nature and cause of the accusation" was enough to "keep the issue alive in state courts, notwithstanding the fact that his state court briefs predominantly cited state court cases"); *Doyle v. Rackley*, No. 2:15-cv-2069-WBS-DB, 2018 WL 1586356, at *5 (E.D. Cal. Apr. 2, 2018) (concluding that a petitioner had satisfied the requirement via a brief reference to "imposition of a criminal punishment greater than that permitted by state law . . . and under the Fifth Amendment"), *adopted by* 2018 WL 10847504 (E.D. Cal. July 5, 2018); *Wright v. Taylor*, No. 06-cv-2313-BEN, 2007 WL 2703142, at *5 (S.D. Cal. Sept. 14, 2007) ("Petitioner relied predominantly on California state law in his argument section, but nonetheless, [his] explicit reference to federal law satisfies the exhaustion requirement under 28 U.S.C. § 2254(b)(1).").

provided the factual basis for his claim. Accordingly, Allen has satisfied the requirement to "fairly present" Claim 7 to the Alaska state courts, and he therefore has exhausted his state remedies regarding Claim 7.

## V.    CONCLUSION

After considering the parties' filings, the Court concludes that Claims 2 through 4 of Allen's amended petition technically are exhausted, but have been procedurally defaulted on adequate and independent state law grounds. Allen has not established the requisite cause and prejudice to justify excusing his procedural default. Claims 2 through 4 therefore must be dismissed. Allen's Claim 7, however, is properly exhausted, and the Court will not dismiss it.

Accordingly, Respondent's *Motion to Dismiss Petitioner's Second Amended Petition* at Docket 156 is GRANTED IN PART with respect to Claims 2 through 4 and DENIED IN PART with respect to Claim 7.

**IT IS THEREFORE ORDERED:**

1.    Claims 2, 3, and 4 of Petitioner's *Second Amended Petition* (Docket 155) are dismissed.

2.    Respondent shall file and serve an answer responding to Petitioner's remaining claim (Claim 7) within **30 days** from the entry of this order.

IT IS SO ORDERED this 26th day of August, 2022, at Anchorage, Alaska.

*/s/ Ralph R. Beistline*
RALPH R. BEISTLINE
Senior United States District Judge